My client, Tarango Trucking, operates a truck parking lot. It got sued in a wrongful death action where Mr. Burks-Russell was tragically killed by a tractor that rolled. According to the petition that was filed by the plaintiff in state court, Mr. Burks-Russell had driven the tractor trailer onto the property. He had disconnected the trailer from the tractor. He was over at the trailer at the time that the tractor rolled. There are allegations in the case that do deal with why the tractor rolled and allegations with regard to why Mr. Burks-Russell was killed. The insurance policy has two aspects of automobile exclusion that are at issue, which is whether the claims arose out of the use or maintenance of the tractor, whether they arose out of the use or maintenance of the trailer, and then whether the parking exception to that exclusion applies. Then separately, after the accident has happened, after Mr. Burks-Russell has been struck and crushed by the tractor, he remains, everything has come to a rest. At that point, according to the plaintiff's petition, there is a 911 call. The people responding on the 911 call say, please do not move Mr. Burks-Russell, but in fact, they go out there and they use some heavy construction equipment, according to the petition. They move the tractor off of Mr. Burks-Russell. They extricate him and they drag him out, and according to the petition, that exacerbates the injuries to Mr. Burks-Russell. That's important because this is a wrongful death case and there is nothing in the petition that sets out when the fatal injury to Mr. Burks-Russell was inflicted, whether it was when he was initially crushed by the tractor or when he was extracted and he was dragged out from underneath the tractor. So, in looking at the use issue first, we believe that the district court improperly conflated the tractor and the trailer, and in its analysis, effectively treated them as a single unit, whereas they need to be broken apart. They were two separate autos within the meaning of the auto exclusion at the time of the accident. They had been physically disconnected from each other. The Texas Supreme Court has adopted what are called the Lindsay factors, three different factors that are looked at in determining whether an accident arises out of the use of an automobile. One is that the accident arises or the injury arises out of the inherent nature of the auto. The second is that the injury ceased, and the third is that the auto does more than furnish the location of the injury. So, with regard to the tractor-trailer itself, at the time of the accident, any use of that tractor by Mr. Burks-Russell had ceased. He had parked the tractor, he had gotten out of the tractor, he had disconnected the trailer, and he was working over by the trailer. So, any use at that point had ceased, and the key factor is use not ceasing disqualifies it under the Lindsay factor from arising out of the use of the tractor. He simply wasn't using it at the time of the accident. With regard to the trailer, the use exclusion excludes any work that is done. Use includes loading and unloading of an auto, but it excludes unloading where the unloading is being done with an object that is not attached. There's an allegation that he was using a lift that was on the trailer, but it was not a lift that was attached to the trailer, at least with regard to the four corners of the petition in the state court. So, it doesn't trigger actual use. The accident, which is the crushing by the tractor, does not arise out of the inherent nature of the trailer, which is the first Lindsay factor. In fact, although he's by the trailer at most, the trailer furnishes the location of the injury, which is the third Lindsay factor, which says that the auto must do more to then furnish the location or to be used. So, there's no use of the trailer in our analysis under the Lindsay factors. Without use, the next part of the exclusion deals with the maintenance of the vehicle. There is certainly an allegation within the company that Mr. Burks Russell worked for had not properly maintained the tractor or its brakes. However, there is a group of additional allegations that are in addition to and are independent of whether or not they properly maintained the brakes, which deals with proper We believe that the district court improperly adopted a view in the case that ultimately the plaintiff would prevail on a theory of improper maintenance, when in fact the plaintiff could equally prevail on the alternate theories and come outside of maintenance, such as not furnishing Mr. Burks Russell with adequate safety equipment, such as chalk blocks for wheels if the tractor rolled, or overworking Mr. Burks Russell to the point that he forgot to set the brakes when he first got out of the tractor. For those reasons, we do not believe that the use exclusion applies or that the maintenance exclusion applies. If either of those exclusions applies, then you get to the parking exception. And there is, to be frank, pretty much a dearth of case law actually applying this parking exception. And there's a significant disagreement between the parties as to what parking means within the meaning of the exclusion. The exclusion excludes injuries arising out of maintenance and use of an auto. It then goes on to say this exclusion does not apply to parking. We believe that the causal nexus that you are looking at for the relationship between parking and injury is the same causal nexus that you're looking at for the exclusion, which is arising out of it. We also believe that parking has two separate components, one of which is to place the vehicle that you're parking, and the other is to leave it at that place. And when you look at the dictionary definitions, there are two parts. There's parking it and there's leaving it in that place. You know, all the cases I saw, and there weren't many about the parking exception, there were valet type people who go up to a restaurant and the valet comes out and says I'll park your car. And he gets in the car and as he's moving out to park it, something happens. A mechanic, if you take your car to the shop and the mechanic makes a repair and he drives it around the block, road test it. I'm not sure I saw one where, I saw one case like that where the guy was backing out of a garage into the street and hit a pedestrian or something like that. I mean, the word parking is an action word. And do you find any cases where they extended that beyond parking and unparking? In other words, that the action occurred either while parking the vehicle or unparking the vehicle? The cases all were, how's the best way to put this? I didn't find a case where the parked vehicle was unmanned at the time of the accident. I didn't find one on our exact set of facts where the vehicle rolls after it has been parked and when there's nobody within the dictionary meaning of parking and the leaving in place component of parking and that the risk of a vehicle rolling because you didn't set a brake when you parked it, the risk that you park a vehicle partway into a street and it's struck by another vehicle, that those all are inherent in parking and that they come within the parking exception. And you're important part about this exclusion is how depersonalized it is from the insured. Original iterations of the auto exclusion talked about maintenance to use by the insured. And then you would have an exclusion for parking and you'd be excluding it from, you'd have an exception to the exclusion that was already tied to conduct by the insured. Here it's different because the restriction of maintenance to use by the insured is removed in this iteration of the auto exclusion. And so we're talking about, for example here, maintenance to use by WS excavating not by tarango trucking. And we're talking about tarango trucking actually being the operator of a parking lot. Let me pause you for a second. So I confess I'm a little hung up on the loading and unloading language. And the auto exclusion states pretty plainly that a policy doesn't cover bodily injury arising from loading or unloading. And the parking task was complete, I think, but the unloading task was underway. And I'm a little hung up on the loading and unloading language. Under the Lindsay practice when you're looking at loading or unloading, it has nothing to do with where the unloading is taking place. It's nothing to do with the nature of the unloading that contributes to this accident under the Lindsay practice. The accident happened after the decedent was finished parking. Yes. While he was unloading, correct? While he was unloading the trailer. You have to separate these things analytically. So he parks the tractor and he's unloading the trailer. When you look at the trailer under the Lindsay practice, you ask, does his injury arise out of something with regard to the inherent nature of the trailer? And it doesn't. Does the trailer do anything more other than be the location where he is when he is struck by the tractor, which is the third Lindsay practice? And the trailer does nothing but furnish the location of where he is when he's struck by the tractor. So when you separate the trailer out and look at it under the Lindsay practice, even if he is unloading the trailer, there's nothing in the inherent nature of the trailer of the unloading act that contributes to the injury under the Lindsay factors and it really does nothing more than furnish the location. And finally, the other thing that I'd like to address in the remaining minutes is the Western heritage approach and the idea of when does the causation chain actually end, which we believe is significant, that even if you find that there is excluded conduct and exclusion that would apply to the initial accident when he's struck by the tractor, at that point when everything has come to rest, there's a group of cases, again, not a giant set of cases, but certainly Western heritage and other specified conduct exclusion cases, which we've cited for their persuasive authority there from other jurisdictions, from Washington, Illinois, and Tennessee, that talk about the fact that you reach a point where the victim has reached the point that the initial injury-causing action is over, the initial accident is over, and at that point, with regard to either summoning aid or doing an additional act that causes further injury, that that is analytically distinct. And here we believe, under Western heritage and those cases, that it is analytically distinct. Once the tractor is on top of Mr. Burks Russell, he's laying there, there's no activity going on, everything has come to a rest, and then the petition is very clear to allege that at that point, there is negligence on the part of the defendants by extricating him from under the tractor, from dragging him underneath, contrary to the instructions according to the petition that they received on 9-1-1, and that that conduct caused additional injury, which is also alleged. And we believe that that creates a separate incident, a separate incidence of negligence that has to be analyzed separately, and that you cannot extend the causation chain under the auto exclusion to encompass that second injury. For those reasons, we believe that the judgment of the district court, finding that there was no duty to indemnify and no duty, no duty to defend and no duty to indemnify, should be reversed. Thank you. Corkadel, thanks very much. We'll see you back on rebuttal in a few minutes. Mr. Winslet, correct? All right. Welcome. Good morning, Your Honor. Let me first say that I share Mr. Corkadel's comment about insurance cases clearing the courtroom. It's even worse when you have to speak second. So, anyway, let me just say, let me begin by saying that I don't intend to make a lengthy presentation to the court this morning. I will instead say at the outset that every one of the arguments that the appellant is trial court level, both by the magistrate judge and by the federal district court judge. As the court knows, the trial court authored a thirty-six page opinion that is very thorough and it's very well reasoned and I certainly don't intend to burden the court with a rehash of that. So, instead, I just want to cut right to the chase and say that clearly there's a very straightforward auto exclusion. The auto exclusion excludes from coverage bodily injury arising out of the maintenance or use of any auto. There's been no allegation by the appellant at any point in this proceeding at the trial court or here that that's somehow an ambiguous exclusion. Everybody, I think, agrees that it's not. And so, the legal determination before the court is taking that exclusion and applying it to the facts that were asserted in the underlying case. And I don't want to misstate that, so I'm going to read just for a second from the pleading in the underlying case. The plaintiff, Mr. Russell, parked his tractor trailer and proceeded to inspect and offload the heavy equipment. Offloading the heavy equipment required Mr. Russell to operate a hydraulic lift on the trailer after first unhitching the tractor from the trailer. Mr. Russell unhitched the tractor and attempted to operate the hydraulic lift on the trailer. While operating the lift, the tractor braking system disengaged, causing the tractor to roll back and strike Mr. Russell, crushing and pinning his body. Those are the allegations in the underlying case. And then the question becomes, does that exclusion apply there? And I don't think there's any question but that it does. First of all, we know we're dealing with an auto. The policy is very explicit in defining an auto as including both the tractor and the trailer. So we know we've got an auto. So then the question becomes, did these injuries arise out of the use of an auto? What does use mean? Well, we don't have to go any farther than the policy itself to answer that question. The policy tells you that use includes, but is not limited to, loading or unloading. So we've met the auto definition. We've met the use definition. And then the question becomes, did those injuries somehow arise out of the use of that auto? And the analysis that goes into deciding that is pretty well settled both in this court and before the Texas Supreme Court. When you have an exclusion that essentially excludes liability arising out of some prescribed conduct, this court has held in the past that the causal relationship between the liability and the prescribed conduct needs only be an incidental relationship to. The Texas Supreme Court has held that there just needs to be a but-for causation. And so as the trial court pointed out more than once in the underlying opinion, but for the plaintiff unloading this trailer, these injuries would never have happened. Counsel, what about the argument that but for the parking, the injuries would have never happened? Well, that's an interesting argument. I'm glad the court raised that because it keys into this parking exception that the appellant has raised. Two things. First of all, the exclusion itself, Your Honor, is very broadly worded. It talks about bodily injury arising out of the use of an auto. That's as broad as it gets. The parking exception does not include that arising out of language. It just says parking. So help me understand this. Let's take a case which—and you help me correct my hypothetical if it's a bad one because I want to get the easiest hypo we possibly can where the parking exception to the exclusion is going to apply. So it's an auto maintained and used in accordance with the exclusion, and the injuries indisputably are from the act of parking it. The injuries are absolutely 100 percent from the act of parking. So I'm just imagining the auto, someone's trying to park it up against the side of a building and bangs the truck into the building. Yes. So I assume so far you're with me that the parking exception applies. I do. So what is therefore covered by the policy in my hypothetical? Under that circumstance? So in my hypothetical, the truck is damaged, the building is damaged, and let's just say the driver breaks his leg. What of those—are all of those covered? I think they would be. And why? Well, just because that's the way the policy is worded. What wording are you talking about? I just want to be very precise about it.  If you—the parking—if you're literally during the act of parking and you injure someone or you injure property, to me that's a very clear circumstance where the exception to the exclusion applies. And there would be coverage. And that's great. And I'm glad that we've got—because that's what I was trying to get at. Right. Mr. Epstein, your position about this parking exception. What text are you relying on when you say the damage to the truck, the damage to the building, and the broken leg are covered? Well, it would be under the insuring agreement. The insuring agreement under the policy provides coverage for bodily injury, property damage caused by an occurrence. Exactly. So that's the thing that I'm confused by. So it's bodily injury or property damage arising out of the parking. Yeah, but there's where we differ. You use the phrase arising out of parking. That's not what the exclusion says. And this is very important, Your Honor. It's very important. If you applied the parking exception as including that phrase arising out of parking, you would effectively emasculate the exclusion because when are you ever going to be unloading a trailer when the vehicle's not parked? I mean, in other words, the exception swallows the exclusion if you apply it. And that's what we pointed out. That's what we pointed out in our brief. That's a critical distinction, Your Honor, that you raised. If you insert the words, if you insert the phrase arising out of parking, now you've completely changed the meaning of the exception, and you've broadened it beyond anything that's actually reflected in the exclusion. That's what I'm trying to understand. So I'm looking at it. You say, look, it just says parking. It says this exclusion does not apply to parking. It doesn't say this exclusion does not apply to bodily injury, damage, proper damage, et cetera, associated with parking. It doesn't say any of that. It just refers back to the exclusion, which includes the arising out of language. So what I'm trying to understand is if you agree with me that some of the damages and some of the injuries associated with – I'm not trying to be argumentative, so I'm going to try not to use the word arising out of, but I'm asking you to help me with a word since your point is we should textually read this parking thing super, super narrowly. There needs to be some word somewhere that would show me that the damage to the truck, the damage to the building, and the broken leg are somehow covered by the policy because of the parking exception. Do you see what I'm getting at? I think I do, but I guess I don't know how to respond to it other than to say that you have to be able to read these provisions in harmony. In other words, you can't interpret an exception in a way that it essentially does away or renders a nullity other portions of the policy. And if you apply the exception in the manner that the appellant suggests, again, you completely do away with the exclusion because, like I said, any time you're going to be unloading a trailer, the trailer and the tractor are going to be parked. Yeah, but the insurance company would just come in and say, look, Your Honor, nothing about this particular injury is arising out of the parking. It happened to be parked, but it wasn't like the car rolled backwards. The car didn't roll into a building. None of the injuries are associated with the act of parking. All of the injuries in this case are the fact that while the guy was in the back in the trailer, he slipped and fell or had nothing to do with the act of parking. And so it doesn't eviscerate the parking exception, which is a purely consequentialist argument. The thing I'm hung up on is just textually. If you want us to read this to say it doesn't apply to parking without referencing back to the thing that was supposed to be excluded by the auto exclusion, then I don't understand what verbs or nouns or prepositions or any other form of speech you would have us read into the parking thing to make it make sense. Well, I guess the only other thing I can say to the court is the exclusion in total, it really wouldn't make sense if you inserted the phrase arising out of into the parking exception. And the only other thing I'd point out is there are other exceptions to the exclusion where they actually do use that phrase. If you look down on number four, bodily injury or property damage arising out of the operation or any of the equipment listed in paragraph two, paragraph three. So the policy goes on to tell you in those exceptions. Here's one that actually is broadly worded. It applies in an arising out of kind of setting. But the very fact that that phrase is not used in the first exception, which is parking, tells you I would submit to the court tells you that that's not what's intended. And I appreciate that point. So let's just focus on the distinction between three and four. So is your view that parking exception never applies to bodily injury? No. But you see what I mean? You've just given away your argument on four because bodily injury is referenced in four. Is your position that parking can never apply to, quote, property damage? No. See, and that's referenced in part four. So you have to read something into three. And so I'm trying to understand what you'd have us read into three if it's not just the general exclusion to which this is an exception. Well, I may not be smart enough to understand precisely your question. Let me ask it this way. Okay. You agreed with Judge Oldham's hypothetical that if a truck ran into the wall with a truck and caused damage, that would be covered. So it seems to me that you're saying that it covers damages caused by parking. In some fashion, it's not arising out of, but you're admitting that it covers damage that's related to or caused by or arising out of. There's some causal connection that damage is causally connected with the parking that's covered, is it not? Judge, what I would say to you is, and this is what the trial court said, is the parking exception, it's really – the only reasonable way to read it, it's a temporal statement. In other words, you've got to be in the act of parking when you do whatever damage it is that occurs that's going to be covered under the parking. If you are not in the act of parking, then the parking exception does not apply. And the only way you can extend that is this arising out of stuff where you broaden that exception, which is explicitly not done intentionally. What kind of causal connection would you use? In other words, you're saying that damage caused in the act of parking, is that what you would use? Caused by? Of course, resulting from or caused by. But it is different. That is certainly different than the arising out of language in the main body of the exception. I'm trying to find out, where do you get that? Where do you get that word from? Which word? Caused by or related to. Well, I guess as a practical matter, the temporal aspect of the exclusion is I guess what I rely on logically, is to say the exclusion does not apply to parking. That means while you're parking, and therefore, I mean, and then that takes you back to the insuring agreement, which is taught by bodily injury or property damage caused by an occurrence. It's because by, and you pull, you'd extract that from the insuring agreement. Can you turn attention to the loading and unloading language that I was asking your friend on the other side about? Excuse me? Can you turn your attention to the loading and unloading language that I was asking your friend on the other side about? Yes, yes. Well, I guess the unloading, the loading and unloading. The exclusion states that the policy doesn't cover bodily injury arising out of loading or unloading. Well, it says arising out of the use of an auto, and use includes the term loading and unloading. So yes, it excludes that conduct, and it explicitly does. I mean, you don't have to guess because the policy tells you that part of the definition of use is loading or unloading. It says an auto and a trailer is an auto, and respectfully, Your Honor, I think that's the end of the inquiry. There's no rational argument or any fact that would even arguably suggest that this accident happened while the underlying plaintiff was parking his vehicle. And, again, that's what the trial court seized upon and said there's clearly a temporal element as it relates to the parking exception and that there's been no, that the appellants come forward with no law to suggest otherwise. In fact, I did cite a case in our brief. Now, admittedly, it's from the Western District of Oklahoma, but I did cite a federal opinion in our brief that deals with this exact circumstance with this parking exception in a loading-unloading scenario, and the court explicitly held that the parking exception did not apply for just the same reasons as the trial court did in this case. So, with that being said, I really don't, unless the court has some questions of me, I'm not going to burden you with a longer discussion than I feel like I need to.  Thank you, Your Honor. Thank you very much. All right, Mr. McCorkadale, you've got five more minutes. Five more minutes. Thank you, Your Honor. I just have two additional. You can remove that if you want, but whatever you're comfortable with. I get so used to having to wear it everywhere. Right. I just want to address two points that have been made. The loading and unloading part that you asked about previously when you look at the definition in the policy, it says loading or unloading does not include the movement of property by means of a mechanical device that is not attached to the auto. The hydraulic lift is what Mr. Burks-Russell was using according to the petition, and it simply alleges that it was on the trailer. It does not allege that it was attached to the trailer. In order to prove the applicability of the exclusion, the insurance company would have to show that the allegation is sufficient to be an allegation that it was attached to the trailer, and it's not. It simply says that it was on the trailer. On is different from attached in the same way that dinner is on the table or the judge is on the bench. It's different from physical attachment. The second part about the parking exclusion and what type of a causal nexus do you look to, I think principles of general insurance law provide the answer to that question as to whether the insured is entitled to the broadest reading of arising out of as opposed to what the insurance company contends for and the language that was used by the district court such as when parking or while parking, which is that an exception from an exclusion under Texas law is treated just as a coverage provision. It is to be read broadly in favor of the insured, and so long as we have offered a reasonable reading of that exception to the exclusion, then that is the one that the court should adopt. It should be the one in favor of the insured. Adopting the arising out of parking as the causal nexus is a reasonable reading of that particular language, and we think that when it comes to deciding what the nexus is, that the direction the court should take is clearly laid out by existing Texas insurance law that says when there is a doubt about the extent of the coverage provision, you do read it broadly. Here, the exception to the exclusion is treated as a coverage provision under Texas law. If there are no other questions, that's all I have. We ask that the court vacate the lower finding, reverse the finding that there was no duty to defend, find that there is a duty to defend. With regard to the duty to indemnify, we've consistently taken the position that it's not right for determination at this point, particularly if there's a duty to defend. The underlying case has not been tried on the merits, and there is plenty alleged and plenty of factual development to take place in the underlying case that may well bear on the duty to defend. Thank you. Thank you. The court's grateful to both of you. That wraps up today's cases in the courtroom, and we'll send in recess until tomorrow morning. Thank you both. Thank you.